Good morning. Sean Kajian, I represent Jose Zepeda. That Mr. Zepeda was on a boat that contained a large amount of marijuana is not sufficient to sustain these convictions for conspiracy and possession with intent to distribute. This court's case law makes that clear. Sanchez Mata, Estrada Macias, Ezequiel Ortega. These are all cases that stand for the proposition that simply being a passenger and knowing of the contents of the car or vessel is not sufficient. There was no evidence that Mr. Zepeda had any dominion and control over the substance. U.S. v. Chambers, again, a case in which- He did drive the vessel, didn't he? He did do that sometimes, as did the defendant in Ezequiel Ortega. Ezequiel Ortega admitted to the authorities that he shared the driving, and that wasn't sufficient. In our case, in this case, Mr. Zepeda did do the driving. He's a welder, and that's what the evidence was. He was not a fisherman. He did not know where he was going. He was aimlessly driving the boat, not navigating, but driving the boat, and he would wake up the captain to take over. His non-drug distribution purpose is equally supported by the evidence. The evidence was that he got on the boat because he wanted to ride north because he would earn a better living as a welder up here. There was nothing in the record to indicate otherwise. He walked away from the boat. He had no ownership interest. There was no evidence that he knew how to operate a GPS device or that his fingerprints were even on the GPS device. The phone that he had had no evidence of drug distribution on it, no connection to drug distribution. So the cars that came to the Hollister Ranch region that day, which a tenant, an owner from that ranch, came and testified that people come for surfing and other reasons and they turn right around when they reach the security guard station. And so the cars that came that day, the idea that those are drug-connected is just not true. There's no evidence in the record to support that, but more important, there's no evidence that Mr. Zepeda had any connection to those people. So the evidence does not support that he was a knowing participant in a drug distribution conspiracy. If Mr. Zepeda Ramirez knew that there was the drugs on the boat and he wanted to get here illegally and he said to the other gentleman, if you help me by letting me be on your boat, get to the United States illegally, I'll help you get your boat with its cargo into the United States. Why isn't that sufficient? That would be sufficient, but that's not what exactly happened here. It's not the case that he knew there were drugs on the boat before he got on the boat. And so he got on the boat, and the evidence in the record, the evidence at trial, was that while on the boat he was told that the bails contained marijuana. The evidence was not that he was told beforehand that there would be marijuana on the boat and you will help me with this marijuana. But isn't that the difference between Esquivel and Ortega, where he didn't knowingly drive the vehicle, knowing that there were narcotics in the vehicle. Here he drove the panga boat knowing that there was marijuana on the boat. True, fair enough, but when Mr. Zepeda drove the boat, it's not necessarily for the purpose of assisting or aiding purposely the drug distribution. Frankly, it's for the purpose of him, for the non-drug distribution purpose, for him assisting himself in coming to the United States. The problem is you're here on a sufficiency of the evidence, and that's always really tough because every inference has got to be drawn in favor of affirming the jury's finding. So why isn't the participation, the driving the boat, knowing that the drugs were there, coupled with the agent's testimony that in these types of endeavors, there's always two people. Two people is needed, the captain, and when one person serves as the crew, and maybe the captain recruited him, and then that coupled with the discussion of the money in terms of how much is made. Some juries may see it differently. This jury didn't. So what do you do with that? I agree. Of course, sufficiency of the evidence is not an easy standard to overcome. However, inferences, our criminal justice system is not based solely on inferences and assumptions. That's Ezequiel Ortega. The evidence must sustain a conviction, and here the record is barren that Ezequiel participated in the conspiracy. And so what I say to that is the maritime expert's opinion that there should be two people at all times is not consistent with his own testimony that alien smuggling and drug smuggling are essentially the same, and he testified that in alien smuggling, all you need is one person, the captain, and the aliens can just sit there. And so that's what he said at this trial, and therefore for him to say that necessarily there always is two people in a drug smuggling vessel conspiracy operation is just not supported by his own testimony that you don't always need two people. There is circumstantial evidence, isn't there? Mr. Zepeda did not pay the captain to transport Mr. Zepeda to the United States. Am I correct on that? And if that's correct, then Mr. Zepeda would be asking himself, well, then what's my role here? Why is he giving me this free ride? Ah, it must be because he needs my assistance in getting this boat that requires two people to move it into the United States illegally. Since I'm not paying him, why would he need my assistance? Well, the evidence was that Mr. Zepeda, that's true, Mr. Zepeda, Mr. Rodriguez did ask Mr. Zepeda if he wanted a ride up north, and Mr. Zepeda did agree, and Mr. Zepeda, frankly, it could have been for the purpose of keeping Mr. Rodriguez company. I mean, he's alone on the ship, and it's a long ride from Ensenada to the United States. Again, not necessarily beyond a reasonable doubt supporting each of the essential elements necessary for both counts. There is a non-drug distribution purpose in him getting on the boat and coming to the United States. It's not the case that a rational juror would beyond a reasonable doubt think that it was for a drug distribution purpose. I should also add that while inferences should be in favor of the United States, but that doesn't mean that the facts change. There was no fingerprint evidence connecting him to the drugs. There's no evidence that he helped load the marijuana. There's no evidence that he had a financial interest in the marijuana. There's no evidence that he had any connection to anybody in drug distribution other than being on the boat. And so while inferences are in the government's favor, that doesn't change these facts to the government's favor. It doesn't mean that there was suddenly fingerprint evidence. Thank you, Your Honor. Good morning. May it please the Court. Cassie Palmer for the United States. Defendant's challenges to his convictions rest on two faulty contentions. First, he basically asked the Court to usurp the fact finder's role, look back over the evidence, and to draw all inferences in his favor. Of course, that would turn the standard on its head. Where there are conflicting inferences, the Court is bound to consider them in favor of the verdict and in favor of the government. But secondly, he would have this Court hold that a defendant on a seven-day voyage on a vessel that has open bales of marijuana, more than 3,600 pounds, was merely hitching a ride, was merely present. This Court's holding in Perlasa should be instructive here. In Perlasa, the Court rejected many of the same authorities the defendant relies on here. That's a maritime smuggling case. And in so doing, the Court said, these types of cases are distinguishable. We have to look at different factors. And the factors that the Court looked at were the length of the voyage, the obviousness of the contraband, a relationship between the crew and the captain, the inculpatory statements made after apprehension, witness participation of crew members, and any tactics to avoid capture. And on facts that were much weaker than the facts here, the Court affirmed both on conspiracy and the substantive count. Well, if Mr. Zepeda was entering the country illegally, he wouldn't want to be captured. Where's the evidence that precludes? Mr. Zepeda says, I want to get into the United States. I know this is illegal. I'm going to hitch a ride on your boat. If you need some help driving it, I'm willing to do it. I don't know, nor do I want to know, nor do I care what's under those tarps. Where's the evidence that precludes that? Well, the evidence is that he did know. But once they were already in the ocean, right? Well, it depends. If you look at the recordings of him talking to his co-defendant, they are talking about the fact that they knew that they were doing this. They were going together. They were going to make a team. And he's talking about it as a joint venture. He said, we could have got away, meaning if we didn't run out of gas and we had to stop during the daytime. He says, we were going to stick together. And they're talking about other smugglers they know and how much time they got and trying to figure out what they're going to say to the authorities about what they're doing. So in addition to the fact that this is the type of voyage that requires two people, Special Agent Hart was very specific on that fact. And he said it more than once. And the physical evidence shows that. Everything was situated for two people. It's a seven-day voyage on the sea. You have someone who's driving, but you also need someone bailing water, fueling the boat, doing all of these things. But that's entirely consistent with just, I will help out because I want a free lift to the U.S. because that's how I'm going to get into the country illegally. Then he's still guilty. Not of the drug offense. He is guilty if he knew that there were drugs and he was willing to help so that he could get there. Agreed if he knew before he gets on the boat. Now, once he gets on the boat and he learns that there's drugs, what's he going to do? He's not going to say, I'll let me out at the next stop. He could have reasonably withdrawn at that point if that's. What would he have done to show that? How could he have withdrawn? He would have said, I don't want to go. I don't want to be involved in this. But the fact is, is that his conversation. If the trip were underway. Well, Your Honor, I don't know if the court looked at the record where the bails of marijuana are out in the open on the boat. You can't move. But the point is you can't jump overboard at that point. When he was boarding the boat, he would have seen those. But there's also evidence that he had a long relationship. Did the jury get an aiding and abetting instruction? The jury did get an aiding and abetting instruction, Your Honor. And so at the very least, he was aiding and abetting. But the evidence is even stronger that he actually. I mean, given the. They had a prior relationship, he and his captain. That's one of the factors that the court looked at in Perlasa. And the defendant admitted that both to law enforcement. And that was clear from his conversations with his co-defendant when he was being held. They also knew a lot of other smugglers. So it really wasn't the type of thing where given all of the inferences that must be drawn in the government's favor. Where he would have been surprised about what type of thing he was doing here to go to the United States. And just going back to Perlasa very quickly. The court held on weaker evidence. So there it was a speedboat that contained cocaine. And there were three crew members. And the court held that given the size of the boat, which was small. The obviousness of the contraband. It was from that evidence. It was reasonable to conclude that any rational trier of facts could have found that no member of the crew. Could have been aboard that vessel without knowing of the drugs and participating in its transport. And therefore, that was knowing participation. And the cases cited favorably there. Have similar facts and affirmed on even weaker cases than here. For example, in Valdoria. The court held that given the price and how expensive this type of cargo is. A reasonable jury could have concluded that you're not going to trust someone with more than millions of dollars of cargo. Here the cargo is worth 1.5 million dollars. A reasonable jury could have concluded that the inference would be he knew what he was getting into. Drug traffickers don't allow people who they don't know to be on such a long voyage that's very fraught and requires two people. Secondly, just very quickly. You said they did have prior acquaintances. Yeah, they knew each other. And even by defendant's own admission to law enforcement. He knew the pilot they met at the port where he worked as a welder. And they knew each other since December before the voyage which was in March. So they had a prior relationship. So when you say they wouldn't trust somebody they didn't know. He did know the person. It doesn't mean they were engaged in the drug business together. He knew this was a trustworthy person. Well you wouldn't trust someone who didn't know of the criminal nature of the enterprise. That they were going to be going on a seven day voyage. Most of those cases I think involve the driver of the automobile who's asked to take something across the border. And the answer is well you wouldn't just leave him with the drugs and trust him to deliver this valuable cargo. But to be an assistant on a pango boat where it's not much that the second person could do. Except sleep or help direct the boat while the other one was sleeping. I mean he could alert the authorities. I mean that's in Valdoria which is 144 F 3rd 1249. This court held that a rational jury in a ponga smuggling type of operation could have found that the value of the drugs meant that these crew members wouldn't be trusted on such. You wouldn't bring people in who weren't part of the conspiracy. Who weren't part of the conspiracy. And the defendant was profiting from it. He needed to get there. He needed to get the drugs safely there. He needed to get the boat safely there. Even if you believe he wasn't being paid. That he was being paid in kind for bringing it there. He was just going to be able to come to the United States. Even if you believe. Even if the jury believed that. That is an in kind. That he is receiving something in value. And he does have a vested interest in getting the drugs to the United States. The evidence of course was that he was also getting paid. But even if you draw the inference and believe what he said. The court should still affirm. Finally as far as the recordings. There was some reference to it. And I just want to quickly touch on that topic. It should not be disputed at all. That the defendants own admissions would come in. And that his co-defendants statements were offered for a non hearsay purpose. Which is to provide context. They're not offered for their truth. They're not testimonial. Much as this courts cases in the jailhouse informant context. Where the defendants own statements come in as admissions. The statements of the other person would come in to provide context. Which is a non hearsay purpose. So based upon all of this. The government submits that there is ample evidence. The physical evidence. The circumstantial evidence. The evidence of the expert. That this required two people. That he was absolutely necessary. And defendants admissions. Both to law enforcement. And the admissions during his conversation with his co-defendant. And viewing the evidence in the light most favorable to the government. And in favor of the verdict. As this court must. The court should affirm on both counts. Thank you. Thank you. Okay. Unlike the maritime case the government relies on. There were no tax takes here. To evade arrest. Which is what happened with Sanchez Mata. Did not attempt to evade capture arrest. Sanchez Mata's fingerprints were not found. No long-term or familial relationship was established. The same is true here. There is no long-term or familial relationship between Mr. Rodriguez and Mr. Zepeda. Casual association is not enough. That's what the Ninth Circuit. That's what this court's jury instructions say. Yes, there was an aiding and abetting instruction. But aiding and abetting requires that there would be a specific intent to facilitate the specific crimes charged. And that's not the case here. Yes, he sometimes drove the boat. But that doesn't mean that was with the specific intent to facilitate the conspiracy to distribute. Or the possession with intent to distribute. It's equally true that it was for the specific intent to facilitate his own entry into the United States. The co-defendant's statements in that recording, the government admits, are not substantive evidence. They're for context. And so if they're not for substantive evidence, well, then they can't be evidence for this court to rely on to sustain a conviction. Thank you, Your Honors. Thank you very much. Okay. This argument will be submitted.
judges: Reinhardt, Nguyen, Simon